UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLYDE CHENG, on behalf of himself and all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>CONGRESSWOMAN JACKIE SPEIER,<br><br>　　　　　　Defendant. | Case No. 22-cv-00083-SI<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF]S FIRST CAUSE OF ACTION WITHOUT LEAVE TO AMEND AND DECLINING SUPPLEMENTAL JURISDICTION OVER STATE LAW CLAIMS**<br><br>Re: Dkt. No. 18 |

On June 24, 2022, the Court held a hearing on defendant Congresswoman Jackie Speier's motion to dismiss the complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).  For the reasons set forth below, the Court GRANTS the motion as follows:  plaintiff's cause of action under the Telephone Consumer Protection Act is DISMISSED without leave to amend, and the Court declines supplemental jurisdiction over the state law causes of action.

**BACKGROUND**

On January 6, 2022, plaintiff Clyde Cheng filed a class action complaint against defendant Congresswoman Jackie Speier, who represents California's 14th Congressional District.  Cheng filed this lawsuit "to stop [Congresswoman Speier] from placing telephone calls that play her prerecorded voice without first obtaining permission, and to obtain redress for all persons injured by her conduct."  Compl. ¶ 1 (Dkt. No. 1).  Cheng asserts three causes of action against Congresswoman Speier in both her official and individual capacities: (1) Violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b); (2) Violation of the Unlawful Prong of

the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200; and (3) Violation of the Unfair Prong of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200. The proposed TCPA class is defined as "all persons in the United States who: (1) from the last 4 years to present (2) Defendant called (3) on his or her cellular telephone." *Id.* ¶ 30.

Between November 2020 and July 2021, Cheng received four calls on his cellular phone from Congresswoman Speier inviting him to participate in town halls. *Id*. ¶¶ 21-24. The first call, received on November 23, 2020, was a prerecorded voice that said,

> "Hello, this is Jackie Speier, your Congresswoman. I'm calling first to wish you a blessed Thanksgiving, I know it's been a really tough year for everybody, and secondly, to invite you to participate in my town hall that is going to provide an update on the coronavirus you should expect a phone call to this number on Tuesday, Number 24 at 6 p.m. If you would prefer to participate from a different phone with do so my calling 866-383-2725 at the time of the event. Or, you can stream the event by going to my speier.house.gov/live or to my Facebook page. If you have any questions you can call my office at 650-342-0300. Thank you."

*Id.* ¶ 21. Cheng received similar calls about Congresswoman Speier's town halls on November 24, 2020, July 13, 2021, and July 14, 2021. *Id*. ¶¶ 22-24. Cheng alleges that he never consented to receive calls from Congresswoman Speier and that he "tried to opt-out but there were no instructions on how to do so." *Id*. ¶¶ 24-25.

Cheng reported the unsolicited phone calls to his attorney, and in July 2021, Cheng's attorney wrote a letter to Congresswoman Speier's office, "informing Ms. Speier of the violation," requesting information on how Cheng's number was obtained, and requesting that Cheng be added to a "do not call" list. *Id.* ¶ 27. On July 27, 2021, Congresswoman Speier's office responded that Cheng would be placed on the "do not call" list, but did not explain how the office obtained Cheng's phone number. *Id.* ¶ 28. On December 15, 2021, Cheng received another unsolicited call on his cell phone with Congresswoman Speier's prerecorded voice, again inviting him to participate in a town hall. *Id.* ¶ 29.

Cheng alleges Congresswoman Speier violated the TCPA by not obtaining consent from the call recipients to receive the messages, playing the prerecorded messages, failing to add Cheng to the "do not call" list, and "willfully" and/or "knowingly" making such calls. *Id.* ¶¶ 39-45. Cheng alleges Congresswoman Speier invaded his and the class's privacy, causing them to suffer actual

damages that entitles them to $500-$1,500 in civil fines for each violation and an injunction requiring Congresswoman Speier to cease such calls. *Id.* ¶ 43.

Cheng alleges that Congresswoman Speier's actions also violated Cal. Bus. & Prof. Code § 17200. *Id.* ¶¶ 46-62. Cheng alleges that Congresswoman Speier violated the unlawful prong of Cal. Bus. & Prof. Code § 17200 based upon the TCPA violations. *Id.* ¶ 48. Furthermore, Cheng alleges these calls offend "an established public policy or that are immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers" and are therefore in violation of the unfair prong of Cal. Bus. & Prof. Code § 17200. *Id.* ¶ 58. Cheng and the class members seek injunctive relief under Cal. Civ. Code § 17204 requiring Congresswoman Speier to cease the phone calls. *Id.* ¶¶ 55, 62.

On April 14, 2022, Congresswoman Speier filed a Notice of Substitution of the United States as Defendant on Counts II & III, the state law causes of action. "Notice" (Dkt. No. 17).[1] The Notice states that the Federal Torts Claim Act, 28 U.S.C. §§ 1346(b); 2671-2680 (the "FTCA"), as amended by the Westfall Act, requires any suit against federal employees for "their negligent or wrongful acts or omissions taken within the scope of their office or employment" to proceed as "a suit against the United States." *Id.* at 1-2. The Notice states the Attorney General can certify a federal employee was acting within their official duties at the time of the claim, and that once certified, the claim "shall be deemed an action against the United States." *Id.* Michelle Lo, Chief of the Civil Division, has certified Congresswoman Speier was acting within the scope of her employment. *See id.* Ex 1. Cheng opposes the Notice and certification. (Dkt. No. 22).

On April 14, 2022, Congresswoman Speier moved to dismiss Cheng's claims for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

---

[1] Defendant's motion makes clear that the Notice of Substitution (and the parties' arguments regarding the validity of that substitution), only applies to the state law claims and not to the TCPA cause of action. Def's Mtn. at 23 (Dkt. No. 18).

3

**LEGAL STANDARD**

A case may be dismissed when there is a "lack of subject matter jurisdiction." Fed. R. Civ. Pro. 12(b)(1). When presented with a motion to dismiss under Rule12(b)(1) for lack of subject matter jurisdiction, a federal court must first distinguish between a "facial attack" and a "factual attack." *See Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). For a facial attack, the challenger is asserting the complaint is "insufficient on [its] face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). When a challenge to the court's subject matter jurisdiction is facial, the inquiry is confined to allegations within the complaint. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). Furthermore, the court should take allegations within the plaintiff's complaint as true. *See Bollard v. Cal. Province of the Soc'y of Jesus*, 196 F.3d 940, 945 (9th Cir. 1999). However, "in a factual attack, the challenger disputes the truth of the allegations, that by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. Factual attacks are often made "by presenting affidavits or other evidence properly brought before the court." *Id.* Once a factual attack has been made, the plaintiff has the burden to provide proof of jurisdiction "under the same evidentiary standard that governs in the summary judgment context." *Leite*, 749 F.3d at 1121. A court does not need to presume the truthfulness of plaintiff's allegations when examining a factual attack. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). However, without a "full-fledged evidentiary hearing, disputes in the facts pertinent to subject matter are viewed in the light most favorable to the opposing party." *Jackson v. SSA*, No. C 10-02578 JW, 2011 U.S. Dist. LEXIS 160232, at *4 (N.D. Cal. Oct. 19, 2011) (citing *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996)).

**DISCUSSION**

**I.    Telephone Consumer Protection Act, 47 U.S.C. § 227**

   **A.    Official Capacity**

Congresswoman Speier moves to dismiss Cheng's TCPA claim against her in her official capacity for lack of subject matter jurisdiction based on sovereign immunity. "In an official-capacity claim, the relief sought is only nominally against the official and in fact is against the

4

official's office and thus the sovereign itself." *Lewis v. Clarke*, 137 S. Ct. 1285, 1291 (2017). The United States, as a sovereign, is immune from suits if it has not consented to be sued on each claim. *See Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1173 (9th Cir. 2007). "This immunity extends to executive and legislative branch officials, including Members of Congress, acting in their official capacities." *Ardalan v. McHugh*, No. 13-CV-01138-LHK, 2013 WL 6212710, at *11 (N.D. Cal. Nov. 27, 2013) (collecting cases). When faced with a 12(b)(1) motion to dismiss, the nonmovant has the burden of proving sovereign immunity does not bar suit. *Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015). A plaintiff must point to a statute by Congress that has waived immunity to establish subject matter jurisdiction when asserting a claim against a defendant in their official capacity. *See Jachetta v. United States*, 653 F.3d 898, 903 (9th Cir. 2011).

Congresswoman Speier contends that the Supreme Court has held that the United States is immune from suits arising under the TCPA, citing *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016). In *Campbell-Ewald*, the Court held that a federal contractor did not share in the federal government's "unqualified immunity from liability and litigation" under the TCPA. *Id.* at 166. Instead, the Court held, "[w]hen a contractor violates both federal law and the Government's explicit instructions, as here alleged, no 'derivative immunity' shields the contractor from suit by persons adversely affected by the violation." *Id.* In reaching that holding, the Court noted that "the United States and its agencies, it is undisputed, are not subject to the TCPA's prohibitions because no statute lifts their immunity." *Id.*; *see also Cunningham v. Lester*, 990 F.3d 361, 365 (4th Cir. 2021) ("[T]he Supreme Court has already settled the question of whether the TCPA contains a waiver of sovereign immunity. It does not.").

Cheng's opposition does not address *Campbell-Ewald*. Instead, Cheng asserts that he has alleged the elements of a TCPA claim, and he cites several cases for the proposition that "[c]ourts regularly decline to dismiss well pled prerecorded voice TCPA claims, even those originating from politicians and political parties." Opp'n at 4 (Dkt. No. 22). However, as Congresswoman Speier notes in her reply, those cases are inapposite as they involve TCPA claims against private political campaigns and the courts were not evaluating whether the defendants were entitled to sovereign

1    immunity. *See Pederson v. Donald J. Trump for President, Inc.*, 465 F.Supp.3d 929 (D. Minn. June 8, 2020); *Lenhardt v. Democratic Party HQ*, Case No. 21-4001-DDC-ADM 2021 WL 3022284 (D. Kan. Jul. 16, 2021).[2]

Cheng cites other inapposite cases involving claims against government contractors. *See Yearsley v. W.A. Ross Constr. Co.*, U.S. 18, 20-21 (1940) (landowner sued government contractor for property damage resulting from construction project authorized by Congress); *Metzgar v. KBR, Inc. (In re KBR, Inc.)*, 744 F.3d 326, 342 (4th Cir. 2014) (servicemembers sued military contractors seeking to recover for injuries incurred at overseas military bases); *Mairs v. Allsup LLC*, Case No. 19-CV-01086-NJR, 2020 WL 2745981, at *2 (S.D. Ill. May 27, 2020) (denying motion to dismiss TCPA claim against government contractor because "the questions of whether Allsup is the SSA's agent and, therefore, exempt along with liability are fact-based ones, which are outside the four corners of the complaint.").

Here, Cheng is not suing a federal contractor, but a member of Congress. Under *Campbell-Ewald*, the "United States and its agencies are not subject to the TCPA's prohibitions because no statute lifts their immunities." 577 U.S. at 166. Further, "the doctrine of sovereign immunity generally 'forecloses . . . claims against the House of Representatives and Senate as institutions,' and against members of both congressional houses 'acting in their official capacities,' since 'an 'official capacity' suit is treated as a suit against a government entity." *Jud. Watch, Inc. v. Schiff*, 474 F. Supp. 3d 305, 310 (D.D.C. 2020), *aff'd and remanded*, 998 F.3d 989 (D.C. Cir. 2021). Accordingly, the Court GRANTS defendant's motion to dismiss Cheng's TCPA claim against Congresswoman Speier in her official capacity on the basis of sovereign immunity.[3]

---

[2] In *Lenhart*, the court also dismissed the *pro se* plaintiff's TCPA claims against individual politicians, including then Senator Kamala Harris and Senator Elizabeth Warren, for lack of standing because the "Amended Complaint alleges no facts suggesting that any of the individual defendants initiated the text messages." *Id*. at *4. The court did not address sovereign immunity.

[3] Cheng devotes much of his opposition to arguing that the Federal Tort Claims Act provides a waiver of sovereign immunity and permits his claims. However, Cheng does not cite any authority for the proposition that the FTCA constitutes a waiver of sovereign immunity for a TCPA claim, and to the contrary, *Campbell-Ewald* states that "no statute" provides a waiver of immunity for TCPA claims against the federal government or its agencies. *Campbell-Ewald*, 577 U.S. at 166.

### B. Individual Capacity

Cheng has also brought suit under the TCPA against Congresswoman Speier in her individual capacity. Congresswoman Speier argues that the individual capacity claim must be dismissed based on sovereign immunity because the federal government is the real party in interest.

"[C]ourts should look to whether the sovereign is the real party in interest to determine whether sovereign immunity bars the suit." *Lewis*, 137 S. Ct. at 1290. "In making this assessment, courts may not simply rely on the characterization of the parties in the complaint, but rather must determine in the first instance whether the remedy sought is truly against the sovereign." *Id.* (holding tribe was not real party in interest and thus tribe member was not entitled to sovereign immunity in negligence lawsuit against member based on vehicle accident when he was operating a vehicle in the scope of his employment and money judgment would not "operate against" the tribe); *see also Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 687 (1949) ("[T]he crucial question is whether the relief sought in a suit nominally addressed to the officer is relief against the sovereign.").

Congresswoman Speier argues that the federal government is the real party in interest because any relief granted would necessarily limit how a member of Congress allocates his or her resources and dictate what members of Congress and their staffs may do when contacting constituents. Congresswoman Speier asserts that constituent communications are one of the basic functions of a members' official duties, and she notes that costs related to constituent communications are reimbursed from each member's Representational Allowance, *see* 2 U.S.C. § 5341, and that the House Communication Standards Commission sets standards for official mass communications from Members of Congress, including robocalls. *See* House of Representatives Communications Standards Manual (effective December 30, 2020).[4]

For support, Congresswoman Speier cites the Fourth Circuit's decision in *Cunningham v. Lester*, in which a consumer brought a class action against federal employees in their individual

---

[4] The Court takes judicial notice of this document, and of the Members' Congressional Handbook, 117th Congress. The documents are found at Dkt. No. 18-1 and 18-2, and are publicly accessible on the internet. *See Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009) (holding court may consider evidence outside of the pleadings to resolve motions to dismiss under Rule 12(b)(1)).

7

capacities alleging that the defendants violated the TCPA by instructing a contractor to send prerecorded messages to approximately 680,000 people, none of whom had previously consented to receive such messages, advertising the availability of health insurance coverage under the Patient Protection and Affordable Care Act (ACA). *Cunningham*, 990 F.3d at 363-64. Citing *Campbell-Ewald*, the Fourth Circuit stated, "[b]ecause sovereign immunity would indisputably bar Cunningham's suit if it were brought against the government, identifying the real party in interest is now the decisive question." *Id.* at 365. The Fourth Circuit held that the federal government was the real party in interest, and therefore that the suit was barred by sovereign immunity. The court reasoned,

> The statutory mandate at the center of this case is the requirement that CMS "establish a system" for ensuring that applicants "receive notice of eligibility for an applicable State health subsidy program." 42 U.S.C. §§ 18083(a), (b)(2), (e). Unlike the defendant in *Lewis*, who was haled into court on account of his personal negligence, the defendants, as CMS employees, were plainly acting in furtherance of this federal mandate when they signed the contract with GDIT and instructed GDIT to place its automated calls. The defendants' actions are simply not otherwise intelligible. The possibility that the defendants may have been acting *ultra vires* is not alleged by either party. And the notion that the defendants may have been acting in their own private interest is not plausible. Furthermore, there is no indication in *Martin*, or in the pertinent Supreme Court precedent, that any of these inquiries into the substance of the case should be relaxed or omitted simply because Cunningham is not seeking an injunction.
>
> And to consider, even briefly, against whom the judgment would operate and on whom its burden would fall reveals the enormity of what Cunningham is asking this court to do. Though the money judgment would nominally fall on the defendants alone, remaining tethered to reality—as *Pennhurst* requires—means that we cannot avert our eyes from the effects that such a judgment will have on the State. It is commonly observed, after all, that the State is not a natural person and that its power to act derives solely from the efforts of its agents. *See, e.g.*, *Pennhurst*, 465 U.S. at 114 n.25, 104 S.Ct. 900; *Berkman v. United States*, 957 F.2d 108, 112 (4th Cir. 1992). If successful, Cunningham's putative class action suit could saddle three CMS employees, whose actions conformed to their official duties and statutory mandate, with a judgment worth hundreds of millions of dollars. J.A. 14–15. While CMS's statutory mandate would remain, the ability of any CMS employee to do what *Campbell* clearly permits the State to do—that is, to act in ways otherwise barred by the TCPA—would vanish. Allowing Cunningham's case to proceed would reduce *Campbell* to a practical nullity.

*Id.* at 367-68.

Cheng does not address *Cunningham*, nor does he respond to defendant's arguments that the remedy sought here – injunctive relief and class-wide monetary damages – is actually relief against the sovereign. Instead, Cheng asserts an individual capacity suit is proper because Congresswoman

8

Speier was not acting within the scope of her employment because she had discretion in how she contacted her constituents and the "course of her duties did not require Ms. Speier to conduct numerous telephone virtual halls or to repeatedly promote them without regard to who actually wanted to be contacted or asked not to be contacted." Opp'n at 9. Cheng also argues that Congresswoman Speier's conduct was unreasonable and, circularly, that it violates the TCPA and is therefore outside the scope of her employment. *Id.* at 8.

The Court concludes that the federal government is the real party in interest and therefore that sovereign immunity bars the individual capacity TCPA claim. Cheng does not dispute that constituent communications and town halls are part of Congresswoman Speier's job duties; Cheng does not allege, nor could he, that Speier's phone calls were made for a private purpose, or that her calls were unconstitutional. *See Larson*, 337 U.S. at 701-02. More importantly, the relief Cheng seeks is effectively relief against the sovereign. Cheng seeks TCPA damages of between $500-$1,500 per violation on a class-wide basis, as well as injunctive relief. Injunctive relief or a monetary judgment, such as Cheng seeks, would alter how all members of Congress communicate with their constituents and lead to a change in the allocation of funding for reimbursements. *See Cunningham*, 990 F.3d at 368.

Accordingly, because the federal government is the real party in interest, the individual capacity claim is barred by sovereign immunity and DISMISSED without leave to amend. As such, the Court does not address the parties' arguments regarding whether Congresswoman Speier would be entitled to qualified immunity on this claim.

**II.   California Unfair Competition Law—Unlawful Prong & Unfair Prong Cal. Bus. & Prof. Code § 17200**

A court may decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3) if the district court has dismissed all claims over which it has original jurisdiction. Because this Court has dismissed the federal cause of action, this Court DECLINES to exercise jurisdiction over the remaining causes of action brought under California state law. Accordingly, the Court does not address the parties' arguments regarding the state law claims, including whether the United States

was properly substituted as a defendant on those counts or the applicability of the FTCA and its exemptions.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DISMISSES the TCPA cause of action WITHOUT LEAVE TO AMEND and DECLINES to exercise jurisdiction over the remaining California state law claims pursuant to 28 U.S.C. § 1367(c)(3).

**IT IS SO ORDERED**.

Dated: July 4, 2022

SUSAN ILLSTON
United States District Judge